**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ADDAX PETROLEUM NZE, INC., | § | |
|  Zone Industrielle | § | |
|  Oprag BP 452 | § | |
|  Port Gentil, Republique du Gabon | § | |
| | § | **Case No.: 1:13-cv-138** |
| ADDAX PETROLEUM MAGHENA, INC., | § | |
|  Zone Industrielle | § | |
|  Oprag BP 452 | § | |
|  Port Gentil, Republique du Gabon | § | |
| | § | |
| ADDAX PETROLEUM AWOUN, INC., | § | |
|  Zone Industrielle | § | **COMPLAINT** |
|  Oprag BP 452 | § | |
|  Port Gentil, Republique du Gabon | § | |
| | § | |
| ADDAX PETROLEUM REMBOUÉ, INC., | § | |
|  Zone Industrielle | § | |
|  Oprag BP 452 | § | |
|  Port Gentil, Republique du Gabon | § | |
| | § | |
| and | § | |
| | § | |
| ADDAX PETROLEUM ETAME, INC. | § | |
|  Zone Industrielle | § | |
|  Oprag BP 452 | § | |
|  Port Gentil, Republique du Gabon | § | |
| | § | |
|       Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| ALEX STEWART INTERNATIONAL, L.L.C. | § | |
| 1101 30th Street NW, | § | |
| Washington, DC 20007 | § | |
| | § | |
|       Defendant. | § | |
| _____ | § | |

Plaintiffs Addax Petroleum NZE, Inc., Addax Petroleum Maghena, Inc., Addax Petroleum Awoun, Inc., Addax Petroleum Remboué, Inc., and Addax Petroleum Etame, Inc. (collectively "Addax") file this Complaint against Defendant Alex Stewart International, L.L.C. ("Alex Stewart"), and as grounds state as follows:

## PARTIES

1.      Addax Petroleum NZE, Inc. is an entity formed under the laws of Gabon, with its principal place of business in Gabon.

2.      Addax Petroleum Maghena, Inc. is an entity formed under the laws of Gabon, with its principal place of business in Gabon.

3.      Addax Petroleum Awoun, Inc. is an entity formed under the laws of the British Virgin Islands, with a registered branch office in Gabon, its principal place of business.

4.      Addax Petroleum Remboué, Inc. is an entity formed under the laws of Gabon, with its principal place of business in Gabon.

5.      Addax Petroleum Etame, Inc. is an entity formed under the laws of the British Virgin Islands, with its principal place of business in Gabon.

6.      Alex Stewart is a Delaware Limited Liability Company.  Its principal offices are located at 1101 30th Street NW, Washington, DC 20007, and it can be served with process at that address through serving an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.  On information and belief, Alex Stewart's members include The ENSE Group, a Delaware Corporation with its principal place of business in Washington, D.C.

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction over this dispute under 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  The Addax Plaintiffs are corporations with their principal places of business in Port Gentil, Gabon that are incorporated in Gabon or the British Virgin Islands, and therefore are citizens of Gabon and the British Virgin Islands for diversity purposes.  Alex Stewart is a Delaware Limited Liability Company with its principal place of business in Washington, D.C. (and, on information and belief, has a member that is a Delaware Corporation with its principal place of business in Washington D.C.).  Accordingly, there is complete diversity of citizenship between the Plaintiffs and the Defendant.  Federal jurisdiction is appropriate because the Plaintiffs are citizens of foreign states and the Defendant is a citizen of Delaware and the District of Columbia for diversity purposes.  As shown further below, the amount in controversy, exclusive of interests and costs, exceeds $75,000.

8.     Venue is proper in this district under 28 U.S.C § 1391(b) because Alex Stewart resides in this district.

9.     This Court has personal jurisdiction over Alex Stewart pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because the Defendant is subject to the jurisdiction of a court of general jurisdiction in the District of Columbia.

**FACTUAL BACKGROUND**

10.     This is an action for defamation, tortious interference with contract, and negligence based on the inaccuracies, misrepresentations and false information in Alex Stewart's audit report of Addax's activities provided to the Government of Gabon.

11.     This action also asserts claims for negligent misrepresentation and breach of contract based on Alex Stewart's failure to honor its agreement to provide Addax with a copy of

its final audit report so that Addax could correct any mistakes and misrepresentations before the report was submitted to the Government of Gabon or publicly disseminated.

### The Relationship Between Addax and the Government of Gabon

12.     Addax Petroleum Corporation is an international energy company specializing in the discovery and production of hydrocarbons.  Addax Petroleum Corporation has interests in subsidiaries, the Addax Plaintiffs, which operate in the Republic of Gabon.

13.     The Republic of Gabon is a nation located in West Africa.  For decades, petroleum production and mining have been key industries in Gabon.

14.     Addax made substantial investments in oil production in Gabon, and now maintains interests in various producing oil fields in Gabon, including four onshore licensing areas and one offshore license area.  Addax also has interests in exploration fields in one offshore license area.

15.     Between 1996 and 2004, the Government of Gabon and each of the Addax Plaintiffs entered into a Production Sharing Contract, which sets forth the manner by which the Government of Gabon and each Addax Plaintiff would divide Addax's production of oil between them.  The Production Sharing Contracts also established standards and rules for the calculation of Addax's profits and for the taxation of Addax by the Government of Gabon.

### Alex Stewart Hired by Gabon to Perform Audit

16.     Alex Stewart is a worldwide professional inspection, analytical, and laboratory services company.  It is not an accounting firm, but the services that it offers include representing governments in operational audits of the amounts of royalties and taxes due to those governments for oil and gas production.

17.     In 2011, the Government of Gabon commissioned Alex Stewart to perform an audit of Gabon's hydrocarbons sector, which included Addax's oil and gas production in Gabon. The terms of the contract between the Government of Gabon and Alex Stewart are not publicly available.

18.     Pursuant to the Government of Gabon's commission, from approximately September through November 2011, Alex Stewart personnel from the District of Columbia visited Addax's offices in Gabon to conduct the audit.  Addax cooperated with the audit and provided Alex Stewart with a large number of documents and other information to perform a proper and factually accurate audit.

**Alex Stewart's Initial Findings and Agreement to Provide Further Information**

19.     At a meeting held on or about November 11, 2011, Alex Stewart verbally presented Addax with the preliminary conclusions of its audit, noting exceptions totaling over USD $253 million.  In response, Addax explicitly and unambiguously told Alex Stewart that it disagreed with these preliminary conclusions.

20.     While still at the meeting, Alex Stewart requested that Addax provide additional information in connection with the ongoing audit.  In exchange for Addax's continuing provision of such information, Alex Stewart agreed that it would provide Addax the opportunity to review and comment on its final audit report before such report was submitted to the Government of Gabon or otherwise publicized.

21.     Pursuant to Alex Stewart's request and agreement that Addax would be provided a draft of the final audit report before its submission to the Government of Gabon, Addax sent Alex Stewart substantial additional information after the November 11, 2011 meeting.

22.     Instead of providing Addax with a draft of the final audit report, Alex Stewart sent its final audit report directly to the Government of Gabon without providing any notice whatsoever to Addax, and without allowing any opportunity for Addax to review or comment on the contents of the written audit report.  As a result of Alex Stewart's breach of its promise to provide Addax with the draft final audit report, Addax was prevented from raising in a timely manner the many factual and methodological errors in the report, either with Alex Stewart or with the Government of Gabon.

23.     Addax ultimately received a copy of the audit report from the Government of Gabon in or about April 2012.

24.     To this date, Alex Stewart has not provided Addax with a copy of the final audit report.

**Alex Stewart's False Statements**

25.     The audit report contains numerous factual falsehoods and methodological and interpretive errors, all of which have caused harm to Addax.  Many of these factual falsehoods and methodological and interpretive errors were added to the final audit report after the parties' November 11, 2011 meeting, and were not discussed as part of the preliminary conclusions presented to Addax at that meeting.  The total cumulative effect of the factual falsehoods and methodological and interpretive errors in Alex Stewart's final audit report was to more than double the costs of the audit exceptions attributed to Addax at the November 11, 2011 meeting, resulting in a total amount of USD $598.7 million in audit exceptions (an approximately USD $350 million increase).  According to these false conclusions and statements by Alex Stewart, Addax would owe USD $459.9 million to the Government of Gabon.

26.     Notably, supposed audit exceptions of this magnitude would not and could not have gone unnoticed by Alex Stewart in its initial two months of work.  As such, the audit exceptions were either intentionally concealed from Addax at the November 11, 2011 meeting, and/or were added with knowledge of their falsity or with reckless disregard of their truth, prior to the issuance of the final audit report to the Government of Gabon.

27.     Alex Stewart published the factual falsehoods and methodological and interpretive errors in its report by sending the report to the Government of Gabon.

28.     The false statements included those to the following effect:

- That Addax invoiced illegal costs by deducting them from the Petroleum Costs for an amount of USD $437 million, which translates into an effective and documented loss for the Government of USD $309 million.

- That Addax owes USD $150 million to the Government in unpaid taxes, environmental remediation funds, wrongful calculation of royalties and profit oil, overestimated financial costs and fines.

29.     Alex Stewart's errors in the audit report included the following:

- Alex Stewart improperly disallowed for cost recovery entitlement USD $309 million of Addax's total costs, thereby erroneously inflating the amount of "profit oil" (taxes) owed to the Government.

- Alex Stewart wrongfully classified a portion of Addax's petroleum operations costs as non-recoverable general expenses.

- Alex Stewart improperly assessed disallowed costs as additional amounts owed by Addax to the Government.

- Alex Stewart improperly assessed income tax to Addax.  In so doing, Alex Stewart applied an incorrect "concession" mechanism rather than recognizing that such amounts effectively are included in the calculation of the Government's "profit oil" share under the Production Sharing Contracts.

- Alex Stewart wrongfully assessed a gas flaring penalty against Addax.

- Alex Stewart wrongfully concluded that Addax owes USD $50.5 million to the Government of Gabon for the establishment of an environmental remediation fund, despite the absence of any agreement or other basis in

contract or law for such a charge.

- Alex Stewart failed to use reasonable care in preparing its audit report.

30.     Alex Stewart's factual falsehoods and methodological and interpretive errors are obvious and, on information and belief, would be easily corrected by an auditor of reasonable competence and care.  The errors are so pervasive and of such a magnitude that, on information and belief, they could only have been caused by an intentional effort by Alex Stewart to identify errors that do not exist.

31.     Alex Stewart's wrongful conduct of its audit of Addax has proximately caused and continues to cause direct pecuniary harm to Addax in the form of, among other things, adverse impact to Addax's existing business operations and relationships, lost business opportunities, and harm to Addax's reputation.

**Alex Stewart's Refusal to Engage in Addax's Attempts to Resolve the Dispute**

32.     The fact that Alex Stewart included these false statements intentionally is further confirmed by:  Alex Stewart's refusal to even attempt to resolve these errors by considering Addax's comments about the audit report and suggestions for correction; and Alex Stewart's failure to provide the draft final report to Addax despite its agreement to do so.

33.     Since receiving a copy of Alex Stewart's final audit report from the Government of Gabon, Addax repeatedly requested meetings, both with Alex Stewart and with the Government of Gabon, in an attempt to correct the manifest falsehoods and interpretive and methodological errors, and to resolve this dispute prior to litigation.

34.     Addax has made such requests in writing on multiple occasions.  For example, Addax sent a letter on June 26, 2012 to the President and CEO of Alex Stewart requesting a meeting to discuss the audit.  Again, on July 13, 2012, Addax sent a letter to Alex Stewart – this time to the Chief Operating Officer – requesting a meeting to discuss the problems with the

audit. On October 8, 2012, counsel for Addax sent another letter to the COO requesting a meeting. Each time, Alex Stewart has refused even to meet with Addax to address its objections.

35. Alex Stewart has refused to meet with Addax and has claimed that confidentiality between it and the Government of Gabon prevents any such meeting. This assertion contradicts the fact that Alex Stewart previously met with Addax in November 2011 to discuss the preliminary audit conclusions, as well as Alex Stewart's agreement to allow comment by Addax on its final report, and also is undermined by the fact that Alex Stewart's conclusions and other information from the final report are in the public domain, as addressed below. Alex Stewart's refusal to meet with Addax to address the issues in dispute, and its refusal to explain the bases for the findings in its audit report, are further indication that the manifest errors in its audit methodology and conclusions are intentional.

36. Citing Alex Stewart's report, the Government of Gabon has threatened to end all of Addax's operations in Gabon unless Addax pays the Government over USD $400 million in taxes and fees that Addax does not legitimately owe to the Government.

37. The conclusions and other information in Alex Stewart's final audit report have been publicly disseminated and reported in the Gabonese press. This publication concerning the audit results was reasonably foreseeable by Alex Stewart at the time it issued its error-laden conclusions. As a result, Addax's reputation and business have suffered substantial harm.

38. Addax has incurred substantial direct costs in its attempts to correct the false statements, including professional services fees.

## COUNT I
## DEFAMATION

39. Addax incorporates the allegations in paragraphs 1 through 38 as if stated fully herein.

40.     Alex Stewart published an audit report to the Government of Gabon.

41.     The audit report refers to and concerns Addax and its oil and gas production activities in Gabon.

42.     In the audit report, Alex Stewart falsely states that Addax failed to pay the Government of Gabon for the Government's share of Addax's oil and gas production.

43.     Alex Stewart supported its conclusion with statements like those identified in paragraphs 28 and 29.

44.     These statements, and many others in the audit report, are false, and have damaged Addax's reputation.

45.     Alex Stewart acted intentionally by, among other things, deliberately failing to read pertinent documents available to it, refraining from contacting certain individuals who might have opposing views, and inaccurately characterizing the documents it did review and the statements of individuals with whom it did speak.

46.     Alex Stewart published the statements in the audit report to the Government of Gabon, despite Alex Stewart's agreement not to do so before providing Addax with the opportunity to review and comment on the audit report.

47.     Addax did not receive a copy of the audit report until the Government of Gabon provided a copy to Addax in April 2012.

48.     After Addax received a copy of the audit report, Alex Stewart intentionally disregarded Addax's multiple requests for a meeting to attempt to correct and cure Alex Stewart's false statements.

49.     On information and belief, with regard to the truth of the statements, Alex Stewart acted with actual malice because the statements in the audit report were made with knowledge of

their falsity, or with conscious indifference or reckless disregard for their truth.  The information demonstrating that these false statements were made knowingly or recklessly includes, but is not limited to: (1) the sheer number and financial significance of the false statements, (2) the fact that many of the statements were not initially included in the preliminary report but were added late in the process, and (3) the fact that Alex Stewart has refused to take reasonable steps suggested by Addax to evaluate Addax's complaints about the statements.

50.     Addax has suffered damage as a direct and proximate result of Alex Stewart's defamation, including injury to Addax's reputation.  The amount of damages will be proven at trial, but exceeds $75,000.00, plus costs and expenses chargeable to Alex Stewart, attorney's fees, and unpaid accrued interest, all according to proof at time of trial or entry of judgment.

## COUNT II
## TORTIOUS INFERENCE WITH CONTRACT

51.     Addax incorporates the allegations in paragraphs 1 through 38 as if stated fully herein.

52.     Each of the Addax Plaintiffs had valid Production Sharing Contracts with the Government of Gabon.

53.     Alex Stewart was aware of the contracts existing between the Addax Plaintiffs and the Government of Gabon.

54.     Alex Stewart willfully and intentionally interfered with those contracts by issuing an audit report that ignored the binding provisions of the contractual agreements between Addax and the Government of Gabon, reflected a lack of reasonable care in conducting the audit, and contained materially false information as specifically identified above in paragraphs 28 and 29.

55.     Alex Stewart's final audit report and the process that it followed in issuing that report are so rife with errors and so divergent from industry practice of conducting operational

compliance reviews that they are an intentional effort by Alex Stewart to allege wrongdoing by Addax (where none exists) in order to induce the Government of Gabon to breach its contracts with the Addax Plaintiffs, to demand concessions from Addax under the contracts, and ultimately to terminate its business relationship with Addax if the Government's demands are not met.

56.     Alex Stewart's refusal to meet with Addax to correct, or even discuss, the final audit report has facilitated and/or caused the Government of Gabon to breach its contracts with Addax.

57.     As a direct and proximate result of Alex Stewart's tortious interference with Addax's contracts with the Government of Gabon, Addax has incurred actual damages, in an amount to be proven at trial, but which exceeds $75,000.00, plus costs and expenses chargeable to Alex Stewart, attorney's fees, and unpaid accrued interest, all according to proof at time of trial or entry of judgment.

### COUNT III
### NEGLIGENCE

58.     Addax incorporates the allegations in paragraphs 1 through 38 as if stated fully herein.

59.     Alex Stewart had a duty to Addax as the subject of its audit to conduct its audit with reasonable care, and failed to do so.

60.     Alex Stewart was aware that the Government of Gabon and Addax would use and rely upon its audit report for the purposes of evaluating Addax's current, ongoing and future operational relationship with the Government of Gabon, and Addax's financial obligations to the Government of Gabon.

61.     Alex Stewart was aware that the Government of Gabon and Addax would use and rely upon its audit report to determine and assess Addax's current business operations and its future business opportunities in Gabon.

62.     Alex Stewart failed to comply with its professional obligations and to conduct its audit with reasonable care.

63.     Alex Stewart's failure to exercise reasonable care in the conduct of its audit of Addax has proximately caused and continues to cause direct pecuniary harm to Addax in the form of, among other things, adverse impact to Addax's existing business operations and relationships, lost business opportunities, and harm to Addax's reputation, in an amount to be proven at trial, but which exceeds $75,000.00, plus costs and expenses chargeable to Alex Stewart, attorney's fees, and unpaid accrued interest, all according to proof at time of trial or entry of judgment.

### COUNT IV
### NEGLIGENT MISREPRESENTATION

64.     Addax incorporates the allegations in paragraphs 1 through 38 as if stated fully herein.

65.     Alex Stewart made a representation to Addax in the course of the parties' November 11, 2011 meeting that in exchange for Addax's continued provision of information to Alex Stewart in connection with the audit, Addax would receive a draft copy of Alex Stewart's final audit report and be provided the opportunity to comment on it before the report was submitted to the Government of Gabon or otherwise publicly disseminated.  This representation was false.

66.     Alex Stewart supplied this false information knowing that Addax would rely on it.

67.     Alex Stewart failed to exercise reasonable care or competence in communicating the information to Addax.

68.     Addax justifiably relied upon Alex Stewart's misrepresentation.  At the time, the misrepresentation was consistent with the fact that Alex Stewart had provided its preliminary audit conclusions to Addax.

69.     Addax has suffered injury as a direct and proximate result of Alex Stewart's misrepresentation.

70.     Addax's injury has resulted in damages in an amount to be proven at trial, but which exceed $75,000.00, plus costs and expenses chargeable to Alex Stewart, attorney's fees, and unpaid accrued interest, all according to proof at time of trial or entry of judgment.

**COUNT V**
**BREACH OF CONTRACT**

71.     Addax incorporates the allegations in paragraphs 1 through 38 as if stated fully herein.

72.     There is a valid, enforceable contract between Addax and Alex Stewart, by which Addax was to provide additional information for Alex Stewart's audit and Alex Stewart, in return for such information, was to provide Addax with the opportunity to review and comment on Alex Stewart's final audit report.

73.     Addax   performed   its   contractual   obligations   by   providing   the   promised information to Alex Stewart.

74.     Alex Stewart breached the contract by failing to provide Addax with a copy of the final audit report, and in failing to provide Addax with an opportunity to comment on the final report.

75.     Addax has suffered injury as a direct and proximate cause of Alex Stewart's breach of contract.

76.     Addax's injury has resulted in damages in an amount to be proven at trial, but which exceed $75,000.00, plus costs and expenses chargeable to Alex Stewart, attorney's fees, and unpaid accrued interest, all according to proof at time of trial or entry of judgment.

### JURY DEMAND

Plaintiffs request a trial by jury.

### PRAYER

WHEREFORE, the Addax Plaintiffs respectfully request that Alex Stewart International, L.L.C. be required to answer and appear herein, and that the Plaintiffs be awarded damages in an amount to be proven at trial, as well as attorneys' fees to the fullest extent allowed by law, pre- and post-judgment interest at the maximum legal rate, and costs of suit, together with such other and further relief to which they are justly entitled.

Dated:  February 1, 2013

CHADBOURNE & PARKE LLP

By   /s/ David M. Raim
          David M. Raim (D.C. Bar No. 390843)
          A Member of the Firm
          1200 New Hampshire Avenue, NW
          Washington, D.C.  20036
          Telephone:  (202) 974-5625
          Facsimile:  (202) 974-6725
          Email:  draim@chadbourne.com

          *Of Counsel:*

          HERBERT SMITH FREEHILLS
           NEW YORK LLP
          450 Lexington Avenue, 14th Floor
          New York, NY 10017
          Telephone: (917) 542-7600

Facsimile: (917) 542-7601
Thomas E. Riley
Email: thomas.riley@hsf.com
Allison M. Alcasabas
Email: allison.alcasabas@hsf.com
Garrett S. Kamen
Email: garrett.kamen@hsf.com

*Attorneys for Plaintiffs*
*Addax Petroleum NZE Inc., Addax*
*Petroleum Maghena Inc., Addax*
*Petroleum Awoun, Inc., Addax Petroleum*
*Remboué, Inc., and Addax Petroleum*
*Etame, Inc.*

16